UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIE E. BOYD,

        Plaintiff,

v.

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS,

        Defendant.

Civil Action No. 09-2055 (RBW)

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's motion to dismiss or, in the alternative, for summary judgment. For the reasons discussed below, summary judgment will be granted for the defendant.

I. BACKGROUND

The plaintiff brings this action against the United States Department of Justice ("DOJ"), Executive Office for United States Attorneys ("EOUSA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that the EOUSA has failed to release certain public records pertaining to a government informant, Bryant Troupe. Complaint for Declaratory Injunctive Relief Pertaining to the Records on Bryant Troupe, Government Informant ("Compl.") at 1-2. In relevant part, the plaintiff's FOIA request read as follows:

> This is a formal request for all public records in the possession of the Government, pursuant to the direct [sic] of the Court of Appeals for the District of Columbia, in case Boyd v. Criminal Div. of the U.S. Dept. of Justice, 475 F.3d 381, 390 (D.C. Cir. 2007), decided February 6, 2007[]. W[h]ere the Court stated:

1

> We need not address Amicus's contention that the Government is nonetheless required to disclose the same information that was officially disclosed in the Miller case . . . because the Attorney's Office advised Boyd that, upon request, it would provide him with all public information concerning Troupe in its possession.

Compl., Appendix ("App.") D (June 27, 2007 letter from the plaintiff to Suzanne Little, Assistant Director, FOIA/Privacy Unit, EOUSA). The case to which the plaintiff refers arose from FOIA requests he submitted "[f]ollowing his conviction of drugs and weapons charges . . . in an attempt to uncover alleged violations of *Brady v. Maryland*, 373 U.S. 83, 86 (1963), during his trial." *Boyd v. Crim. Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 384 (D.C. Cir. 2007); *see United States v. Boyd*, 180 F.3d 967 (8th Cir. 1999) (affirming the plaintiff's criminal convictions). The plaintiff opines that information pertaining to Troupe, who had been a government informant and had sold drugs, *see Miller v. United States*, 135 F.3d 1254, 1255-56 (8th Cir. 1998), "could have been used to support Boyd's defense that the gun and drugs found in the closet belonged to Troupe[, not the plaintiff,] and to suggest that the government may have failed to investigate that possibility because it had an interest in not jeopardizing convictions that Troupe, acting as an informant, had helped to obtain, was withheld from Boyd during his criminal trial in violation of *Brady*." *Boyd*, 475 F.3d at 384.

The EOUSA acknowledged receipt of the plaintiff's FOIA request on August 3, 2007, which was assigned Request Number ("No.") 07-2467. Compl. at 3; *see id*., App. E (Letter to the plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA). Due to a large number of requests then pending before the EOUSA, the limited resources it had to process the requests, and the EOUSA's practice of processing requests on a "first-in-first-out" basis, on November 20, 2007, the EOUSA advised the plaintiff in response to

2

his inquiry as to the status of his request that it had not yet been processed. *See id*., App. G (Letter from W.G. Stewart). Then, on June 27, 2008, the EOUSA informed the plaintiff that no records responsive to his request had been located at the United States Attorney's Office for the District of Columbia. *Id*., Ex. I (Letter from W.G. Stewart).

The plaintiff subsequently filed an administrative appeal of the EOUSA's response to his FOIA request to the DOJ's Office of Information and Privacy ("OIP"). Compl. at 3. He accused the government of acting in bad faith, asserting that "it kn[ew] or should have known the documents requested on Bryant Troupe are records that would be found in the [United States Attorney's Office for] the Eastern District of Missouri." *Id.*, Ex. J (July 8, 2008 letter to Richard Huff, Co-Director, OIP) at 1. In light of the plaintiff's appeal, the EOUSA reopened the plaintiff's case, *see* Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mem."), Declaration ("Decl.") of John W. Kornmeier ("Kornmeier Decl."), Exhibit ("Ex.") D (September 23, 2008 letter from Janice Galli McLeod, Associate Director, OIP), which was then assigned Request No. 08-3281, and forwarded it to the United States Attorney's Office for the Eastern District of Missouri ("USAO/MOE"). *Id.*, Kornmeier Decl. ¶ 9. The USAO/MOE found one responsive record, *id.*, Decl. of Karen S. Schroeder ("Schroeder Decl.") ¶ 12, which the EOUSA released to the plaintiff in full, *id.*, Kornmeier Decl. ¶ 13.

## II.  DISCUSSION

### *A. Summary Judgment in a FOIA Case*

Courts will grant summary judgment if the pleadings, the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the plaintiff's claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (citation and internal question marks omitted).

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within [a] claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

*B. The EOUSA's Searches for Responsive Records*

The USAO/MOE was instructed to treat the request as a third party request for public records pertaining to Bryant Troupe. Def.'s Mem., Schroeder Decl. ¶ 6.

The USAO/MOE uses the Legal Information Network System ("LIONS") as its case management and tracking system "to record and maintain up-to-date information on cases and matters opened by Assistant U.S. Attorneys ('AUSAs') and to produce a variety of reports on that information." *Id.* ¶ 8. LIONS replaced an older system known as the Prosecutors Management Information System ("PROMIS"). *Id.* A Criminal Docket clerk at the USAO/MOE searched both LIONS and PROMIS, and "did not find any evidence of existence of records pertaining to Bryant Troupe." *Id.* Likewise, her "manual search of [the office's] index card system which tracked records and case files prior to the creation of LIONS and PROMIS" failed to locate any responsive records. *Id.*

On November 20, 2008, "an all-office e-mail was sent to request all records on Bryant Troupe." *Id*. An AUSA responded that Bryant Troupe was a witness who testified during the criminal trial of Byron James Miller and Larry Curtis Kerr. *Id.* ¶ 9. The Criminal Docket clerk then conducted a search for the Miller and Kerr file in LIONS, *id.* ¶ 10; Reply to Plaintiff's Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Reply"), Supplemental Decl. of Karen S. Schroeder ("Schroeder Supp. Decl.") ¶ 6,[1] and the clerk learned that the file had been sent to the Federal Records Center in March 2001, Def.'s Mem., Schroeder Decl. ¶ 10. "The office files indicate[d] that it was recalled in June, 2001 and returned to the

---

[1] Ms. Schroeder represented that "no search was required of the PROMIS database or card indices" because the file had been located in LIONS, Def.'s Reply, Schroeder Supp. Decl. ¶ 6, and PROMIS and the card indices "predate the Miller and Kerr case, so they would not have records of that file," *id.* ¶ 6 n.1.

Federal Records Center in August, 2003." *Id.* However, in response to a December 2, 2008 request to recall the file, the Federal Records Center's files indicated "that the file [was] still signed out to the US Attorneys." *Id.* Nevertheless, although "[a] thorough and complete search of the office was conducted[, . . .] the file [could not] be located." *Id.*

On January 12, 2010, Ms. Schroeder "searched the files referencing Willie Boyd to locate any public information on Bryant Troupe." *Id.* ¶ 12. Only one record was "locate[d] in the Willie Boyd file," and it was described as "a copy Jury Trial - Volume I, March 3, 1997 of Bryant Troupe's testimony in U.S. v. Miller and Kerr, 4:96CR365 CDP."[2] *Id.*

The plaintiff argues that the EOUSA's search for responsive records pertaining to Bryant Troupe was neither reasonable nor adequate. Plaintiff's Opposition to the Defendant EOUSA's Motion to Dismiss or in the Alternative, for Summary Judgment ("Pl.'s Opp'n") at 4, 7-14. He argues that "the public records on Troupe could only have been accessed through the review of the Miller criminal case file, and the Boyd criminal case file . . . [w]hich was not done." *Id.* at 10. Further, the plaintiff argues that the EOUSA did not conduct a reasonable search for the Miller and Kerr criminal case file. *Id.* at 11-12. Had agency staff done so, the plaintiff asserts

---

[2] According to the plaintiff, he received "a package contain[in]g . . . pages 20 . . . through 122 of the trial transcripts of Bryant Troupe's testimony from the Miller case in Vol. I of . . . March 3, 1997," although Troupe's testimony "was from pages 20 through 255, from March 3 and 4 of 1997." Plaintiff's Opposition to the Defendant EOUSA's Motion to Dismiss or in the Alternative, for Summary Judgment ("Pl.'s Opp'n") at 14. A purported discrepancy concerning the number of pages of transcript that comprise Troupe's testimony is not determinative. The EOUSA located and released in full one volume of the transcript containing Troupe's testimony presented on March 3, 1997. If Troupe's testimony occurred over the course of two days, as the declaration submitted by the plaintiff contends, a complete transcript may include the additional pages to which the plaintiff refers. However, the plaintiff's assertion that Troupe's testimony appears on pages 20 through 255 of the trial transcript neither undermines Ms. Schroeder's declaration nor establishes that additional pages of the transcript are actually contained in EOUSA files.

that it would have found that Troupe's testimony at the *Miller* trial "covered pages 20 through 255." *Id.* at 12. In his view, Ms. Schroeder does not describe "in any detail what components in any computer databases were searched after receiving an email from the AUSA." *Id.* at 13. He further notes that Ms. Schroeder does not "state . . . what computerized databases were used to search and find files on Boyd to determine whether a reasonable search was conducted to find all public records on Bryant Troupe." *Id.* at 15. The EOUSA responds with additional declarations. *See* Def.'s Reply, Decl. of Antoinette Decker ("Decker Decl.") and Decl. of Dianne E. Michels ("Michels Decl.").

*Miller and Kerr File*

James Miller and Larry Curtis Kerr were indicted by a grand jury, tried and convicted by a jury, and sentenced in the United States District Court for the Eastern District of Missouri. Def.'s Reply, Decker Decl. ¶ 3. After their appeals and motions for post-conviction relief were denied, *id.* ¶¶ 4-5, the AUSA assigned to the case caused the criminal case file to be closed and stored, *id.* ¶ 6. After Kerr noted an appeal of the denial of another post-conviction motion, the AUSA "ordered the criminal case file from storage to review" an issue raised in the appeal, and she had the file returned to storage after the appeal was denied. *Id.* ¶ 8. In 2008, Miller and Kerr were among hundreds of criminal defendants who filed motions for reductions of their respective sentences. *Id.* ¶¶ 9, 11. Pursuant to the district court's Order, the Probation Department prepared a packet for each defendant consisting of the defendant's judgment and commitment order, presentence investigation report, and a statement regarding his behavior while incarcerated, and forwarded a copy of the packet to the United States Attorney's Office and each defendant's attorney. *Id.* ¶ 10. In order to expedite the resolution of the motions, a paralegal

7

retained by the USAO/MOE reviewed each defendant's packet, wrote a response, and forwarded the response to the appropriate AUSA for approval. *Id.* ¶ 11. The paralegal did not request for her review "the hundreds of closed case files" in the underlying criminal cases. *Id.*

*Records Requests to the Federal Records Center*

The USAO/MOE maintains a "manual log . . . tracking all file requests made to the Federal Records Center." Def.'s Reply, Michels Decl. ¶ 7. According to the log, the USAO/MOE sent the Miller and Kerr file to the Federal Records Center in March 2001. *Id.* ¶ 6. On June 22, 2001, the USAO/MOE requested the Miller and Kerr file from the Federal Records Center, it received the file on June 28, 2001, and returned the file in August 2003. *Id.*; *see id.*, Attach. 2 (excerpt from log). On December 2, 2008, the USAO/MOE requested the Miller file a second time. *Id.* ¶ 6. A handwritten notation on the request form indicated "that the file was already signed out to [the USAO/MOE]." *Id.*; *see id.*, Attachment 1 (Reference Request for Folder 1996R01194 – Byron James Miller). "[N]o other requests had been made for the Miller/Kerr file until the November 2008 request pursuant to the FOIA request of Willie Boyd." *Id.* ¶ 8.

Notwithstanding the defendant's further clarification of its search efforts, the plaintiff insists that its search was inadequate. He contends that the defendants "failed to identify with any particularity what internal administrative number was used, what district court case number [was] used, or whether the assigned Assistant United States Attorney's name was used," such that neither the plaintiff nor the Court can be sure that the EOUSA located the correct file. Plaintiff's Surreply to the Government's Reply to Plaintiff's Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment at 2. In support of his position, he submits the

declarations of Byron James Miller, who is a federal inmate and who attests to the purported existence of responsive public records in his criminal case file. *See id.*, Supp. Decl. of Byron James Miller ¶¶ 1-2; *see also* Pl.'s Opp'n, Decl. of Byron James Miller.

Notwithstanding the submission of Miller's declarations, the plaintiff offers mere speculation as to the existence of records pertaining to Bryant Troupe maintained in EOUSA or USAO/MOE files. Such speculation does not undermine declarations which are presumed to have been prepared and submitted in good faith. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) (concluding that "plaintiff's speculation as to the trustworthiness of the Clinton administration and [agency's] failure to release documents that plaintiff apparently expected to be released is insufficient as a matter of law to defeat defendant's motion for summary judgment as to the adequacy of the FOIA search"). Neither the plaintiff nor his declarant attests to having personal knowledge of the existence of responsive records or the agency's methods of recordkeeping, or even if the agency at one time maintained records pertaining to Bryant Troupe. In any event, an agency can release only those documents it has in its files at the time its searches were conducted. "Nothing in the law requires the agency to document the fate of documents it cannot find," *Roberts v. U.S. Dep't of Justice*, No. 92-1707, 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993), or to produce records that it does not possess, *see Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998), or to retrieve documents which previously had been in its possession, *see Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (noting FOIA's requirement that an agency "provide access to those [agency records] which it in fact has created and retained"); *cf. Jones v. FBI*, 41 F.3d 238, 249 (6th Cir. 1994) (court cannot order agency "to make amends for

any documents destroyed prior to the request").

The defendants' declarations adequately explain the means by which their staff conducted the searches, including searches of computerized databases and index card systems, informal inquiries to AUSAs who may have knowledge of the matter, and requests to and responses from the Federal Records Center regarding the Miller and Kerr file. Furthermore, it is reasonable that the agency treated the request as a third-party request, that is, a request from the plaintiff for records pertaining to another person, Bryant Troupe. And because it is not a first-party request, that is, a request for records pertaining to the plaintiff himself, the agency need not explain its methods for locating records pertaining to the plaintiff because he was not the subject of the FOIA request. *See Voinche v. FBI*, No. 96-5304, 1997 WL 411685, at *1 (D.C. Cir. June 19, 1997) (ruling that the agency was not obliged to "search for records beyond the scope of the request"); *Kidder v. FBI*, 517 F. Supp. 2d 17, 23-24 (D.D.C. 2007) (finding that, because requester did not reference aliases under which the FBI might maintain records pertaining to the subject of her FOIA request, "the FBI [was] under no obligation to search its records for information regarding any names other than [the subject's name]"); *cf. Wheeler v. Exec. Office of U.S. Attorneys*, No. 05-1133, 2008 WL 178451, at *8-9 (D.D.C. Jan. 17, 2008) (finding agency's search unreasonable because it did not search requester's co-defendant's files where the request was for records related to the criminal case, not just the requester, and where the requester also notified agency of this search deficiency).

It matters not that the declarations do not provide administrative case numbers, court case numbers, or the names of AUSAs associated with the events related to the searches. And because "[i]t is settled law that the results of a search do not determine whether the search is

adequate," *Zavala v. Drug Enforcement Admin.*, 667 F. Supp. 2d 85, 95 (D.D.C. 2009) (citations omitted), the plaintiff's dissatisfaction with the results of the search is not relevant. Thus, the EOUSA's inability to locate all the records the plaintiff desires does not defeat the defendant's motion for summary judgment "so long as the [EOUSA] establishes that its staff located no records responsive to plaintiff's request after a reasonable search using methods reasonably expected to produce the information requested." *Id.* (internal quotation marks and brackets omitted) (citations omitted).

## II. CONCLUSION

Based on the defendants' declarations, the Court concludes that the EOUSA conducted searches reasonably designed to locate records responsive to the plaintiff's FOIA request. The EOUSA therefore has demonstrated that there are no genuine issues of material fact in dispute regarding its compliance with the FOIA and that it is entitled to judgment as a matter of law. Accordingly, the Court will grant the defendants' motion for summary judgment. An Order accompanies this Memorandum Opinion.

/s/
REGGIE B. WALTON
United States District Judge

DATE: September 28, 2010